IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| NATHANIEL DANCE, III, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 3:09-CV-423–HEH |
| ) | |
| CITY OF RICHMOND POLICE ) | |
| DEPARTMENT, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION
(Granting Defendants' Motion to Dismiss, Granting Defendants' Motion for
Judgment on the Pleadings, Denying Defendants' Motions to Strike)

This case involves a constitutional challenge to law enforcement activities related to two restaurants in the City of Richmond, Club 534 and Manhattans. Plaintiffs allege deprivation of civil rights under 42 U.S.C. § 1983, civil conspiracy to injure reputation and/or business in violation of § 18.2-500 of the Code of Virginia, and defamation in violation of § 8.01-45 of the Code of Virginia. The case is currently before the Court on (1) a Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure by the Commonwealth Defendants, (2) a Motion for a Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure by the City Defendants, (3) a Motion to Strike Plaintiffs' response to the first above motion by the Commonwealth Defendants, (4) a Motion to Strike Plaintiffs' responses to the second above motion by the City Defendants, and (5) two Motions for an Extension of Time to

File Response by the Plaintiffs.[1]

The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials presently before the Court and argument would not aid in the decisional process. For the reasons discussed herein, the Court finds the Plaintiffs have failed to plead any actionable claims.[2]

## I. Background

Gipson's, LTD ("Gipsons"), the corporate entity doing business under the name "Club 534"; Dance Family Restaurants ("DFR"), the corporate entity doing business under the name "Manhattans"; and Nathaniel Dance, III, ("Dance"), the proprietor of these two restaurants originally brought this action in the Circuit Court for the City of Richmond. Plaintiffs allege their claims against the City of Richmond Police Department ("RPD"); Thomas Nolan ("Nolan"), an officer with the RPD; Frank Misiano ("Misiano"), a detective with the RPD; the Virginia Alcoholic Beverage Control ("ABC"); Jama Smith ("Smith"), Matthew Halphen ("Halphen"), and Jeff Slonaker ("Slonaker"), each an agent with the ABC; the Virginia Commonwealth University Police Department ("VCU PD"); and William Fuller ("Fuller"), Chief of the VCU PD.

---

[1] Commonwealth Defendants are agencies and employees of the Commonwealth of Virginia. City Defendants are the Richmond Police Department and employees thereof. Each are described more particularly below.

[2] In the interest of addressing the issues in this case expeditiously, the Court will deny the Motions to Strike by the Commonwealth Defendants and the City Defendants. The Court will consider the arguments presented by the Plaintiffs in opposition to the Defendants' Motion to Dismiss and Motion for Judgment on the Pleadings. As Plaintiffs' Motions for Extension of Time to File Response were filed after the Responses were filed, the Court will treat them as moot.

According to the Complaint, Plaintiffs have had a number of interactions with RPD, VCU PD, ABC, and their employees over the years. Club 534 and Manhattans have been the subject of several investigations and the location of several incidents requiring law enforcement involvement. Dance, himself, has also been the subject of law enforcement measures, having been arrested for brandishing a firearm in Manhattans and charged with maintaining a common nuisance at Club 534. On March 28, 2006, Plaintiff Dance filed complaints with the ABC Board against Smith, Halphen, and Slonaker for allegedly harassing Dance. Dance filed a similar complaint with the Richmond Police Department against Nolan and other RPD officers. Unsatisfied with the response he received, Plaintiffs filed this lawsuit.

Count I of Plaintiffs' Complaint alleges several claims of deprivation of civil rights pursuant to 18 U.S.C. § 1983. Plaintiffs claim that RPD and Misiano violated their rights to equal protection for alleged failure to properly investigate and pursue reports of criminal activity. Plaintiffs further allege that all Defendants deprived Plaintiffs of what they refer to as their "constitutional right to economic freedom."

Count II of Plaintiffs' Complaint alleges that Defendants engaged in a civil conspiracy to injure the reputation and/or business of Plaintiffs pursuant to Va. Code § 18.2-500. The Complaint alleges that the Defendants took various actions to injure or ruin Plaintiffs' reputations with an intent to drive Plaintiffs out of business.

Count III alleges defamation by all Defendants pursuant to Va. Code § 8.01-45.

3

Plaintiffs request compensatory damages in the amount of $5,747,804.80 and punitive damages in the amount of $11,495,229.00.

While the case was pending before the Circuit Court for the City of Richmond, Defendants VCU PD, ABC, Smith, Halphen, Slonaker, and Fuller ("Commonwealth Defendants") filed a Motion to Dismiss based on sovereign immunity and failure to state a claim. The remaining defendants, RPD, Missiano, and Nolan ("City Defendants") removed the case to this Court, and the Commonwealth Defendants consented to removal.

## II. Standard of Review

The plaintiff has the burden of proving that subject matter jurisdiction exists. *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.* The court should grant the Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

Consideration of a motion for judgment on the pleadings under Rule 12(c) utilizes the same standard as a motion made pursuant to Rule 12(b)(6). *Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). The Court assumes the facts alleged in the Complaint

4

are true and draws all reasonable factual inferences in the nonmovant's favor. *James v. Pratt & Whitney*, 126 Fed. Appx. 607, 609 (4th Cir. 2005).

### III. § 1983 Claim Against the Commonwealth Defendants

The Commonwealth Defendants filed a Motion to Dismiss (Dkt. 6) pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, contending alternatively that the claims against them are barred by either sovereign or qualified immunity. They also maintain that the Complaint fails to plead any actionable claims.

States retain immunity from suits as "a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today ... except as altered in the [Constitutional] Convention or certain constitutional Amendments." *Alden v. Maine*, 527 U.S. 706, 713 (1999). Relying on *Lapides v. Board of Regents v. University System of Georgia*, 535 U.S. 613 (2002), Plaintiffs counter that sovereign immunity does not apply in the present case because Defendants consented to federal jurisdiction by removing the case to this Court. As the Defendants have pointed out, the Fourth Circuit has distinguished *Lapides* from cases such as the present one where the Defendants did not consent to suit in the state court. *Stewart v. North Carolina*, 393 F.3d 484, 488-90 (4th Cir. 2005). In the present case, the Commonwealth Defendants preserved their sovereign immunity defense in their Motion to Dismiss filed in the Circuit Court for the City of Richmond. As such, the Commonwealth Defendants have preserved their sovereign immunity defense against Plaintiff's claims.

5

Plaintiffs advance no cogent reason why the Commonwealth of Virginia should not be immune from suit under 42 U.S.C. § 1983 under the facts at hand. Indeed, had the Plaintiff named the Commonwealth of Virginia as a Defendant as opposed to its employees, the Commonwealth would enjoy immunity. *See Lynn v. West*, 134 F.3d 582, 587 (4th Cir. 1998). The same protection applies to its agents.

"[Sovereign] immunity applies to state agencies that may be properly characterized as 'arm[s] of the State,' as well as to state employees acting in their official capacity." *Harter v. Vernon*, 101 F.3d 334, 337 (4th Cir. 1996) (quoting *Mt. Healthy City Board of Ed. v. Doyle*, 429 U.S. 274, 280 (1977)). Plaintiff names as defendants two state agencies, Virginia Commonwealth University Police Department and the Virginia Alcoholic Beverage Control, and four state employees, Smith, Halphen, Slonaker, and Fuller. In determining whether these agencies are "arms of the state," this Court must follow *Regents of the Univ. Cal. v. Doe*, by "considering the provisions of state law that define the agency's character." *Regents of the Univ. Cal. v. Doe*, 519 U.S. 425, 430 n.5 (1997). Virginia Commonwealth University is established under § 23-50.4 *et seq.* of the Code of Virginia and "and shall at all times be under the control of the General Assembly." Va. Code 23-50.4 (2009). The General Assembly empowers the university to have a police force under § 23-232 of the Code of Virginia, and the General Assembly closely regulates these delegated police powers. *See, e.g.*, Va. Code 23-234 (2009). The Virginia Alcoholic Beverage Control Department is created in Title 4.1 of the Code of

Virginia. This Title closely regulates the powers of the ABC Department, Board, and employees. Va. Code 4.1-100 *et seq.* (2009). This Court finds that VCU PD and ABC, as agencies of the Commonwealth, are arms of the state, entitled to sovereign immunity and consequently immune from suit under 42 U.S.C. § 1983.

With regard to the individual Commonwealth Defendants, Plaintiffs do not distinguish in their Complaint whether they are suing the state employees in their official or individual capacities. If Plaintiffs are suing these individuals in their official capacity, they are protected by sovereign immunity. *See Harter*, 101 F.3d at 337 ("[Sovereign] immunity applies ... to state employees acting in their official capacity.").

"[W]hen a plaintiff does not allege capacity specifically, [however,] the court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity." *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995). Based on the analysis below, however, the Court finds that the individual Commonwealth Defendants are immune from suit, regardless of their alleged capacity.

If Plaintiff is suing them in their individual capacities, the Commonwealth Defendants contend they are entitled to qualified immunity. "[T]o defeat defendants' claim of qualified immunity plaintiff must further show that defendants violated clearly established 'constitutional rights of which a reasonable person would have known.'" *Fields v. Prater*, 566 F.3d 381, 389 (4th Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457

7

U.S. 800, 818 (1982)).

In the immediate case, Plaintiffs allege that the Commonwealth Defendants deprived them of "economic freedom," a nebulous right foreign to constitutional jurisprudence. In his response to Defendants' motion, Plaintiffs cite only a statement made in a Congressional subcommittee hearing sixty years ago, *Hearing on H.R. 988 et seq. Before Subcommittee No. 3 of the House Committee on the Judiciary*, 81st Cong., 14-15 (1949) (statement of Sen. Kefauver), and a reference to the justification for antitrust laws by the United States Supreme Court in a case more than thirty years ago. *United States v. Topco*, 405 U.S. 596, 610 (1972). Plaintiffs identify no constitutional wellspring for this purported constitutional guarantee. The scant historical references and lack of citation to any constitutional provision hardly provide the "constitutional clarity" required to overcome a claim of qualified immunity. *Fields*, 457 U.S. at 818. The individual Commonwealth Defendants, to the extent Plaintiff is suing them in their individual capacity, are protected by qualified immunity.

The same analysis applies with respect to any claim against the individual Commonwealth Defendants in their official capacity. *See Harter*, 101 F.3d at 337 ("[Sovereign] immunity applies ... to state employees acting in their official capacity."). Sovereign immunity therefore bars the constitutional claim against the individual Commonwealth Defendants.

Additionally, as the Commonwealth Defendants point out, 42 U.S.C. § 1983

protects against deprivations of rights by "persons" and "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Plaintiffs' claims against the Commonwealth Defendants would be barred on this ground, as well.

### IV. § 1983 Claim Against City Defendants

The first portion of Plaintiffs' § 1983 claim against the City Defendants alleges that the Richmond Police Department[3] deprived Plaintiffs of the equal protection of the law. To state a claim against a municipality for action by a subordinate governmental entity such as RPD under 42 U.S.C. § 1983, a plaintiff must plead "the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Jordan by Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994).

In both the claim against the RPD and the claim against Misiano, Plaintiff's Complaint offers two reasons that support their theory that the alleged behavior could be considered a "policy or custom." *Id.* Plaintiffs allege that RPD had "a policy to discredit Dance and discourage his business in the City of Richmond," Compl. ¶¶ 92, 108, and that RPD and Misiano took the alleged actions "based on VCU's interest in purchasing the building housing Club 534." Compl. ¶¶ 93, 109.

---

[3]Although Plaintiffs address a number of claims against the Richmond Police Department, it is not a suable entity separate and apart from the City of Richmond. *See Davis v. City of Portsmouth*, 579 F. Supp. 1205, 1210 (E.D. Va. 1983), *aff'd* 742 F.2d 1448 (4th Cir.1984).

Neither of these rise to the level of a "policy or custom" implicating municipal liability under § 1983. *Jordan*, 15 F.3d at 338. "An official policy often refers to formal rules or understandings ... that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time, and must be contrasted with episodic exercises of discretion in the operational details of government." *Semple v. City of Moundsville*, 195 F.3d 708, 712 (4th Cir. 1999). Aside from the failure of Plaintiffs to provide any factual basis for their assertion that some "policy" existed, the allegation of "a policy to discredit Dance and discourage his business," Compl. ¶¶ 92, 108, falls short of a "formal rule or understanding[]" of the Richmond Police Department. *Semple*, 195 F.3d at 712. Even when viewed in the light most favorable to the Plaintiff, it does not "establish fixed plans of action to be followed under similar circumstances consistently and over time." *Id.* Assuming any such strategy existed, it is more like an "episodic exercise[] of discretion in the operational details of government," *id.*, and thus is not a policy upon which Plaintiffs' claim can be based. Conjecture and speculation are insufficient to satisfy the pleading requirements of Rule 12(b)(6).

The latter allegation of "VCU's interest in purchasing the building housing Club 534" is not an allegation of a Richmond Police Department or City of Richmond policy; rather, it is an alleged motive by Virginia Commonwealth University, a state agency with no authority over RPD. The Complaint offers no factual basis to conclude that these

entities are acting in concert.[4]

As a result, Plaintiffs fails to sufficiently state a claim under 42 U.S.C. § 1983 against RPD.

The second portion of Plaintiffs' § 1983 claim against the City alleges that Detective Misiano of the RPD deprived the Plaintiffs of the equal protection of the law. As in the § 1983 claim against the Commonwealth Defendants, *supra*, Plaintiffs do not distinguish in their Complaint whether they are suing Detective Misiano in his official or individual capacity. The Court will again employ the time-honored test, "[W]hen a plaintiff does not allege capacity specifically, the court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity." *Biggs*, 66 F.3d at 61. Applying the test in this context, the Court finds that Plaintiffs are suing Misiano in his official capacity. This conclusion is supported by Plaintiffs' contention that Misiano took the alleged actions in concert with the RPD, not in violation of RPD agency regulations or policies. *See id.* Furthermore, Plaintiffs request only compensatory damages, not punitive damages, for this claim, another factor leading to a conclusion that the suit against Misiano is brought in his official capacity. *See id.*

---

[4]Plaintiffs also do not plead the existence of "deficient programs of police training and supervision" or "irresponsible failure by municipal policymakers to put a stop to or correct a widespread pattern of unconstitutional conduct," which can serve as the basis for an imposition of municipal liability in the absence of a specific policy. *Spell v. McDaniel*, 824 F.2d 1380, 1389 (4th Cir. 1987).

Since the suit is brought in Misiano's official capacity, it is treated as duplicative of the claim against RPD and is dismissed. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004).

Plaintiffs also bring suit against the City Defendants for alleged deprivation of "economic freedom." This argument parallels their consitutional claim against the Commonwealth Defendants. For the same reasons discussed above, this claim against the City Defendants will be dismissed.

## V. State Law Civil Conspiracy and Defamation Claims

Plaintiffs also allege civil conspiracy to injure reputation and/or business pursuant to § 18.2-500 of the Code of Virginia (Count II), and defamation pursuant to § 8.01-45 of the Code of Virginia (Count III).

Having resolved all claims arising out of federal law, the Court declines to exercise supplemental jurisdiction over Counts II and III pursuant to 28 U.S.C. § 1367(c)(3). Counts II and III are dismissed without prejudice.

## VI. Conclusion

The Commonwealth of Virginia, its agencies, and employees are protected from liability for Plaintiff's claims under 42 U.S.C. § 1983 by sovereign immunity. The Commonwealth employees, to the extent they are sued in their individual capacity, are protected from Plaintiff's claims under 42 U.S.C. § 1983 by qualified immunity. Plaintiffs fail to state a claim for a deprivation of rights under 42 U.S.C. § 1983 against

the City of Richmond Police Department or its employees.

The Court declines to exercise supplemental jurisdiction over Claims II and III.

For these reasons, the Court will grant the Commonwealth Defendants' Motion to Dismiss and will grant the City Defendants' Motion for Judgment on the Pleadings. Count I is dismissed with prejudice. Counts II and III are dismissed without prejudice.

An appropriate Order will accompany this Memorandum Opinion.

/s/ 
Henry E. Hudson
United States District Judge

Date: Sept. 2, 2009
Richmond, VA